STATE of Ohio ex rel. DETREMBLAY

v.

INDUSTRIAL COMMISSION of Ohio et al.

[Cite as *State ex rel. Detremblay v. Indus. Comm.,*
171 Ohio App.3d 416, 2007-Ohio-2592.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–796.

Decided May 29, 2007.

Dean R. Wagner, for relator.

Marc Dann, Attorney General, and Douglas R. Unver, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Rademaker, Matty, McClelland & Greve and Michael J. Roche, for respondent First National Supermarkets, Inc.

BRYANT, Judge.

{¶ 1} Relator, Anthony Detremblay, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying relator's application for temporary total disability compensation and to find that he is entitled to that compensation.

{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, attached as Appendix A. In her decision, the magistrate concluded that (1) relator failed to sustain his burden of proving that the allowed conditions rendered him temporarily and totally disabled, but that (2) the commission improperly concluded that relator voluntarily abandoned his position of employment pursuant to *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469. The magistrate recommended a limited writ to correct the commission's voluntary-abandonment determination.

{¶ 3} Both respondent Industrial Commission of Ohio and respondent First National Supermarkets, Inc., filed objections to the magistrate's conclusions of law, contending that the magistrate improperly concluded that *Louisiana–Pacific* does not support the commission's finding that relator voluntarily abandoned his employment.

{¶ 4} The magistrate acknowledged that voluntary abandonment of a claimant's former position of employment can preclude the payment of temporary total disability compensation. As the magistrate noted, *Louisiana–Pacific* characterized a firing as a voluntary abandonment when the firing arose out of the employee's violating a written work rule or policy that (1) clearly defined the prohibited conduct that (2) the employer had previously identified as a dischargeable offense and that (3) was known or should have been known to the employee.

{¶ 5} The stipulated evidence here does not support a finding of voluntary abandonment pursuant to *Louisiana–Pacific*. Specifically, the record contains no evidence of a written work rule dealing with the subject or misconduct that led to relator's termination of employment. Rather, the evidence contains a written work rule dated March 10, 2004, a date subsequent to the date that respondent terminated relator's employment. We recognize that the progressive discipline the employer administered, even if administered somewhat inconsistently, arguably may have provided relator notice of the consequences of continuing to violate company policy, but the policy itself was never provided to relator in written form prior to his discharge from employment. The pertinent case law applying the *Louisiana–Pacific* voluntary-abandonment doctrine requires a written work rule as a predicate to finding voluntary abandonment. *State ex rel. McKnabb v. Indus. Comm.* (2001), 92 Ohio St.3d 559, 752 N.E.2d 254. In the absence of evidence of such a written work rule in this case, the commission wrongly premised its decision on voluntary abandonment. Accordingly, the objections are overruled. Nonetheless, because the evidence does not support an award of temporary total disability compensation, the commission properly denied the compensation to relator.

{¶ 6} Following independent review pursuant to Civ.R. 53, we conclude that the magistrate has properly determined the pertinent facts and applied the salient law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, this court issues a limited writ of mandamus ordering the commission to vacate that portion of its order concluding that relator voluntarily abandoned his employment. Because, however, relator failed to show that the commission abused its discretion in denying him temporary total disability compensation, we deny the requested writ in that respect.

Writ issued in part
and denied in part.

BROWN and TYACK, JJ., concur.

## APPENDIX A

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel. Detremblay,

v.

Industrial Commission of Ohio et al.

No. 06AP–796

(REGULAR CALENDAR)

MAGISTRATE'S DECISION

Rendered on January 19, 2007

Dean R. Wagner, for relator.

Marc Dann, Attorney General, and Douglas R. Unver, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Rademaker, Matty, McClelland & Greve and Michael J. Roche, for respondent First National Supermarkets, Inc.

### IN MANDAMUS

{¶ 7} Relator, Anthony Detremblay, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order that denied relator's application for temporary total disability ("TTD") compensation and ordering the commission to find that he is entitled to that compensation.

*Findings of Fact:*

{¶ 8} 1. Relator sustained a work-related injury on August 19, 2002, when he was struck by a car in the parking lot while working for respondent First National Supermarkets, Inc. Relator's claim was allowed for the following conditions: "cervical strain; left tibia contusion; bilateral wrist sprain; aggravation of degenerative disc disease in the lumbosacral spine; interscapular sprain/strain; lumbosacral sprain." Relator's claim was specifically disallowed for the following conditions: "ganglion cyst right wrist; bilateral carpal tunnel syndrome; thoracic spine sprain."

{¶ 9} 2. Relator missed two days of work and then returned to his regular duties as a cashier.

{¶ 10} 3. Evidence in the record demonstrates that before and following his date of injury, there were numerous occasions when the cash drawer from the register at which relator was working did not balance at the end of the day. The documentation in the record shows that prior to the date of injury, relator was counseled three times regarding his cash drawer and 16 times after the date of injury.

{¶ 11} 4. The documentation in the record also establishes that the employer followed a "Cashier Shortage/Overage" policy whereby relator received verbal warnings and written warnings and was placed on certain probationary periods within which he was required to not have any more problems balancing his cash drawer.

{¶ 12} 5. The final time relator's cash drawer did not balance occurred on October 2, 2003. Relator's cash drawer was short $49.99. At the time of this event, relator was on a "Level 5—30 Day Total Accountability" period.

{¶ 13} 6. Pursuant to the employer's policy, the October 2, 2003 violation resulted in relator's termination from employment.

{¶ 14} 7. On October 7, 2003, relator saw Howard H. Gabelman, M.D., who completed a C–84 dated October 9, 2003, certifying relator as being temporarily and totally disabled from October 7, 2003, through an estimated return-to-work date of January 1, 2004. Dr. Gabelman noted that relator had tenderness over the injured area and that he was unable to perform his work duties without incapacitating pain.

{¶ 15} 8. It appears that relator changed physicians, as the record contains C–84s dated November 1 and 15, 2004, from Mark S. Berkowitz, M.D., certifying a period of TTD from December 4, 2003, through an estimated return-to-work date of December 31, 2004. On both of his C–84s, Dr. Berkowitz listed the following conditions that were being treated, which prevented relator's return to work: "cervical sprain" and "degenerative disc disease." Also on both forms, Dr. Berkowitz listed the following additional conditions for which relator was also being treated: "lower leg contusion," "bilateral carpal tunnel syndrome," and "ganglion, rt wrist." Dr. Berkowitz did not note any objective or subjective findings as the basis for his C–84s. Instead, the following notation is made on both C–84s: "awaiting auth. for therapeutic epidural blocks, bone scan, physical therapy tx, physical capacity eval."

{¶ 16} 9. When relator sought the payment of TTD compensation, he also requested that his claim be additionally allowed for certain other conditions including the following: "bilateral carpal tunnel syndrome," "thoracic spine sprain," "lumbosacral spine sprain," "interscapular sprain/strain," "wrist sprain," and "ganglion cyst of the right wrist." Relator also sought the payment of

certain medical bills and requested authorization for treatment and/or diagnostic testing. The treatment being sought included the following: "treatment for caudal epidural blocks; bone scan and Physical Therapy and Functional Capacity Evaluation as requested by Physician of Record, Mark S. Berkowitz, MD."

{¶ 17} 10. An independent medical examination was performed on January 15, 2005, by Sushil M. Sethi, M.D. Dr. Sethi was asked to determine whether the additional conditions should be allowed and whether relator needed continued treatment. Dr. Sethi reviewed the treatment relator had received, which included X-rays and an evaluation performed by Dr. Michael Mackan, who did not find any evidence of ganglion cyst or carpal tunnel syndrome. Dr. Mackan had treated relator conservatively. Dr. Sethi also discussed the X-rays that were taken of relator's back as well as an MRI of his cervical spine. The X-rays revealed that relator's thoracic spine was normal, and his lumbar spine showed only mild degenerative disease. With regard to his cervical spine, the MRI suggested that relator had nonoccupational mild degenerative disease, and there was no evidence of any disc herniation. Further, Dr. Sethi noted that relator indicated that he had received extensive conservative treatment, had been off work for two days, worked as a contract laborer for six weeks in April 2004, had been fired from his job in October 2003, and was not currently working. Following his physical examination, Dr. Sethi noted his findings as well as the records that he had reviewed. Dr. Sethi concluded:

> Multiple physicians have seen the claimant and have not substantiated any bilateral carpal tunnel syndrome, ganglion cyst of the right wrist or thoracic sprain. * * * Today's examination does not show any physical findings of bilateral carpal tunnel syndrome. There are no EMG and nerve conductions showing any bilateral carpal tunnel syndrome. No ganglion cyst of the right wrist was found and thoracic sprain is not documented. Interscapular sprain/-strain adequately explains his symptoms. The claimant has already exhausted all the treatments that are necessary and appropriate. Any further interventions including epidural injections, investigations or physical therapy will be excessive, medically unnecessary and not related to the incident of 08–19–2002, which has resolved a long time ago.

{¶ 18} Dr. Sethi also found that relator had reached maximum medical improvement ("MMI").

{¶ 19} 11. Relator's motions were heard before a district hearing officer ("DHO") on February 2, 2005. The DHO specifically disallowed relator's claim for the additional conditions that he had requested. Further, the DHO denied the request to authorize the requested treatment, based upon a finding that the treatment was not appropriate for the allowed conditions in the claim. The DHO did order the payment of the medical bills as requested. The DHO indicated that

relator had not met the burden of proof concerning the additional conditions and treatment and based this conclusion upon the report of Dr. Sethi dated January 15, 2005. The DHO did grant relator's request for TTD compensation from October 7, 2003, to March 15, 2004, and from April 10 to December 31, 2004, and ordered the employer to consider compensation subsequent to December 31, 2004, upon submission of appropriate disability documentation. The DHO relied upon the C–84s from Drs. Gabelman and Berkowitz.

{¶ 20} 12. Relator appealed the denial of the additional allowances and authorization of treatment, and the employer appealed the payment of TTD compensation. The matter was heard before a staff hearing officer ("SHO") on March 16, 2005. The SHO vacated the prior DHO's order. Thereafter, the SHO specifically denied relator's request to have his claim allowed for the additional conditions, based upon Dr. Sethi's January 15, 2005 report. Furthermore, the SHO also denied the authorization for treatment, likewise based upon Dr. Sethi's report. The SHO also granted payment for certain fee bills relator had submitted. Thereafter, the SHO considered whether relator should be paid TTD compensation and specifically denied that compensation in its entirety. The SHO gave two reasons: (1) the C–84s submitted by Dr. Berkowitz indicated that relator's disability was based upon the additional conditions for which relator's claim was being denied and (2) relator had voluntarily abandoned his employment based upon the cash irregularities. In this regard, the SHO stated:

The injured worker returned to work in 2002 after missing a few days of work. After returning to work the injured worker was disciplined approximately sixteen times, for cash irregularities while working on the cash register, until he was terminated on 10/4/2003. The injured worker requests temporary total compensation to commence on 10/7/2003.

The employer has established the injured worker is not entitled to temporary total compensation based on the decision set forth in *Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401[, 650 N.E.2d 469].

This order is based on the multiple disciplinary forms in file and the injured worker's testimony.

On 6/5/2003 the injured worker was warned that subsequent deviations from policy will result in a separation from employment. The injured worker also testified at hearing that he knew after the June of 2003 discipline meeting that he could be terminated from employment.

Also found persuasive is the 10/4/2003 disciplinary form indicating that the injured worker's cash register drawer was again found to be short in cash and the injured worker was terminated.

The cash register shortage offense outlined on 10/4/2003 is found to be a dischargeable offense that was known by the injured worker to be a dischargeable offense, per his testimony.

Based on the multiple discipline forms in file, the injured worker's testimony, and the medical evidence from Dr. Berkowitz certifying temporary total disability for conditions denied herein, the requested temporary total compensation is denied.

{¶ 21} 13. Relator's further appeal was refused by order of the commission mailed April 12, 2005.

{¶ 22} 14. Thereafter, relator filed the instant mandamus action in this court.

*Conclusions of Law:*

{¶ 23} For the reasons that follow, it is this magistrate's decision that relator's request for a writ of mandamus should be denied.

{¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56, 29 OBR 438, 505 N.E.2d 962. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 22 O.O.3d 400, 429 N.E.2d 433.

{¶ 25} It is undisputed that relator bore the burden of demonstrating that he was entitled to TTD compensation. With regard to the issue of whether relator had voluntarily abandoned his employment, the burden was on the employer to establish.

{¶ 26} Addressing the first issue, whether relator sustained his burden of proving that the allowed conditions rendered him temporarily and totally disabled, the magistrate finds that relator did not meet his burden of proof. Further, whether or not the employer actually established that relator was fired pursuant to the requirements of *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469, the magistrate finds that

relator was not entitled to any TTD compensation, and the commission did not abuse its discretion.

{¶ 27} In the present case, relator presented no evidence regarding any course of treatment following his date of injury, and the C–84 completed by Dr. Gabelman indicated that relator was last seen on October 7, 2003. Further, there is no evidence in the record to establish that relator was having any difficulties performing his job duties due to the allowed conditions in his claim. As evidenced by the record, relator worked for more than a year after his date of injury.

{¶ 28} The magistrate finds the case of *State ex rel. Ohio Treatment Alliance v. Paasewe*, 99 Ohio St.3d 18, 2003-Ohio-2449, 788 N.E.2d 1035, particularly persuasive in the instant case. In *Paasewe*, the claimant sustained a work-related injury on May 11, 2000, and first sought treatment on June 7, 2000. The doctor who examined him concluded that the claimant had been temporarily and totally disabled since the date of injury and certified a period of disability through July 9, 2000. As of July 10, 2000, the doctor released claimant to return to his former job duties with some restrictions. Thereafter, the claimant returned to work on July 13, 14, and 15. On the morning of July 14, the claimant was found sleeping inside a client's apartment, and he was fired two days later. Thereafter, claimant presented a new C–84 on October 2, 2000, from his doctor certifying a continuous period of disability beginning May 11 through October 11, 2000, despite the doctor's prior release of the claimant to work and the claimant's actual return to work.

{¶ 29} The commission found that the claimant's discharge was not consistent with the requirements of *Louisiana–Pacific* and awarded the claimant TTD compensation. In a mandamus action in this court, the employer's request for a writ of mandamus was denied, and the employer appealed to the Supreme Court of Ohio.

{¶ 30} In finding that the claimant was not entitled to TTD compensation, *Paasewe* reads:

> Cognizant of the medical implications involved, we have carefully scrutinized—and will continue to carefully scrutinize—claims for TTC that are close in time to a claimant's termination, particularly where the claimant either had been released or had actually returned to the former position of employment. See *State ex rel. McClain v. Indus. Comm.* (2000), 89 Ohio St.3d 407[, 732 N.E.2d 383] * * *. A determination of temporary total disability inherently declares that a claimant is medically unable to return to his or her former job. Where a claimant works that job on Wednesday morning, is fired on Wednesday afternoon, and alleges on Thursday morning that he or she is now temporarily

and totally disabled, a single question emerges: what happened in 12 hours to transform a nondisabling condition into a disabling one? It is a situation that is—and will remain—inherently suspicious. As we observed in upholding denial of TTC in *McClain*:

"[C]laimant reported for his regular shift on September 4, 1997, and did not complain of any work-prohibitive problems at that time. It was only after claimant tested positive for alcohol consumption that his condition suddenly became work-prohibitive." Id. at 409[, 788 N.E.2d 1035] * * *.

Medical evidence will, therefore, be pivotal in determining eligibility for TTC when a claimant is fired near the time of a claimed disability. If documentation can, for example, indeed establish coincidental injury-related circumstances or demonstrate that the claimant's return to work was not without continuing medical problems, then the claimant may be able to sustain his or her burden of proof. Many claimants, however, will have difficulty establishing that a sudden onset of "disability" that coincides with termination of employment is truly related to the industrial injury.

* * *

Within the space of a few hours, claimant asserts, his nondisabling condition deteriorated into a disabling one, on a date that coincided with his firing. His medical evidence is silent on this, consisting instead of an unexplained repudiation of an earlier release and a failure even to acknowledge claimant's actual return. * * *

Id. at ¶ 7–9, 12.

{¶ 31} The facts in the present case present an even stronger case in favor of upholding the commission's decision to deny relator TTD compensation than the facts in *Paasewe*. In the present case, relator returned to all of his duties two days after the date of injury. Thereafter, relator worked for over a year (from August 2002 through the first part of October 2003). Aside from the evidence noted by Dr. Sethi that relator was being treated by Dr. Gabelman for the conditions he sought to have his claim additionally allowed for, there is no evidence that relator was not able to perform his job duties. In this regard, Dr. Sethi noted that Dr. Gabelman diagnosed various conditions, such as bilateral carpal tunnel syndrome and multiple spine sprains, approximately five months following the injury. However, Dr. Gabelman's treatment notes do not corroborate these diagnoses with any objective physical findings. Further, there is no evidence that Dr. Gabelman placed any restrictions on relator's ability to perform his job duties. Instead, three days following his discharge, relator asserts that he was suddenly unable to perform his job duties. Relator has not submitted any medical evidence to show an exacerbation of his condition, and the C–84s in the record not only indicate that relator was being treated for conditions that are not

allowed, but also failed to establish any increase in symptoms related to relator's originally allowed conditions. For this reason, whether or not the employer would have argued and attempted to establish a termination under *Louisiana–Pacific,* the commission's denial of TTD compensation does not constitute an abuse of discretion.

{¶ 32} With regard to the voluntary-abandonment issue, it is undisputed that voluntary abandonment of the former position of employment can preclude the payment of TTD compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. The rationale is that the claimant undertook certain behavior knowing that a consequence of that behavior could be termination of employment. See *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202.

{¶ 33} In *Louisiana–Pacific,* the court characterized a firing as "voluntary" when that firing is generated by the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee.

{¶ 34} In *State ex rel. McKnabb v. Indus. Comm.* (2001), 92 Ohio St.3d 559, 752 N.E.2d 254, the court recognized the potential for abuse in permitting a simple allegation of misconduct to preclude the payment of TTD compensation. In *McKnabb,* the issue concerned *Louisiana–Pacific*'s reference to a written work rule or policy. The court stated that written work rules do more than just define prohibited conduct—they set forth a standard of enforcement as well.

{¶ 35} In the present case, counsel for employer acknowledged that the over/short policy is not included in the employee handbook that is distributed to all employees, because the policy is job specific. Counsel explained further that the policy was given and explained to front-end or cashier employees. However, counsel did not present evidence that relator was actually given a copy of this policy. Relator acknowledged all of the counseling sessions he had due to his cash-register incidents. Relator also indicated that he understood the policy, but then also indicated that he did not understand everything.

{¶ 36} At the hearing, the employer presented a copy of the policy dated March 10, 2004, and counsel for employer indicated that the policy was printed off the Internet. A review of that policy indicates that it does relate to cashier issues like the incidents concerning relator and that it sets forth levels of discipline beginning with a verbal warning, followed by a written warning, followed by different levels of shift accountability. The record shows that the employer proceeded through the steps with relator until he reached Level 7 of

discipline, at which point he had demonstrated repetitive discrepancies while on accountability and was terminated.

{¶ 37} In the present case, the magistrate finds that the employer failed to meet all the requirements of *Louisiana–Pacific*. Specifically, although the employer demonstrated that there was a well-known and understood policy regarding two discrepancies in a cashier's drawer, and documented its discipline of relator, the employer did not establish that relator was provided with a copy of the policy that the employer presented at the hearing. Counsel could have included an affidavit from a manager or supervisor indicating that relator was actually given a copy of the policy. Although the facts of this case, including the well-documented disciplinary procedure followed by the employer, present a situation in which evidence of an actual written policy having been given to the employee seems unnecessary, the magistrate is not certain that such a distinction should be made. The court has specifically held that the policy must be in writing and given to the employee. Thus, the magistrate concludes that the employer did not meet its burden of proof under *Louisiana–Pacific*, and that portion of the commission's order should be vacated. However, because the magistrate finds that relator did not meet his burden of proving that he was disabled three days after being terminated when he worked for over a year following the date of injury, the magistrate concludes that the commission's order denying him TTD compensation does not constitute an abuse of discretion, and that portion of the commission's order remains in effect.

{¶ 38} Based on the foregoing, it is this magistrate's conclusion that relator's request for a writ of mandamus should be granted in part and denied in part. A limited writ of mandamus should be granted ordering the commission to vacate that portion of its order finding that relator had voluntarily abandoned his employment. However, since relator failed to show that the commission abused its discretion in denying him TTD compensation, no writ should issue in that regard.